Good afternoon. My name is Paula Harms and I represent the petitioner in this matter, Milo Stanley. The question before this panel is simple. Did the prior opinion violate Penholster? It did not. The prior opinion did not consider any new evidence outside of the state court record. And in ordering a hearing, this court specifically found that Stanley had been diligent in developing the factual basis of his claim in state court. Ms. Harms, let me try to understand what you're saying because you're starting to come in a little bit midpoint. By the prior opinion, you mean the prior panel opinion? Yes. Is it your position that the prior panel opinion determined that there was ineffective assistance of counsel in the sentencing? It determined that the state court decision was unreasonable and therefore there existed... If it did, why did it send it back for an evidentiary hearing? Well, I think the analysis is this. It would have been superfluous to have an evidentiary hearing if indeed the panel had determined what you said. Well, I think... It did not? I don't think it would have been superfluous to have a hearing, no, because you still have to determine under 2254a whether or not there was a violation of the Constitution. So in other words... Is it ineffective assistance of counsel and a violation of the Constitution? Yes. So take me back and explain to me why you think that the prior panel determined that there was ineffective assistance of counsel and that we are bound thereby. If that's your position. I think what the prior panel determined is that the state court... Answer my question. Okay. It was unreasonable. Yes, or is it no? Are we bound by the panel decision as to IAC or is it before us now? I think you're bound by the prior panel opinion. Then you don't have to talk about the evidentiary hearing at all. You can sit down. I wish I could sit down right now. Why don't you take an alternate position? I think my position is that what the prior panel found was that it was unreasonable fact-finding by the state court. Yes, I would like to stand here and say we get relief on the paper record, but I don't think I can. Okay. Fine. That's the only point I was trying to make. I didn't see, when I went through the record, I was looking to see whether there was an argument made to the panel under 2254d2, and I didn't see that argument made in the briefs to the 2010 panel. And in reviewing the panel opinion, I didn't see anything that looked like 2254d2 or unreasonable application of the facts. What I saw was an analysis of the Townsend v. Sain factors and a finding that the Petitioner had met that factor because the material facts were not adequately developed at the state court hearing. But that was under the pre-Penholster, Baja, Ducharme, Inks, Inksix, any, I can't quite pronounce that case name, where the understanding before Penholster was decided was that you could make the 2254d1 determination in light of facts that were developed at the evidentiary hearing. So I was puzzled by the argument that the panel had made a determination that the state court had made an unreasonable determination of the facts. I didn't see that anywhere in the panel opinion. The panel opinion at the very beginning sets forth the standard of review under 2254d1 and 2254d2. And in their analysis of whether or not he was entitled to a hearing, it said we give the state court opinion, the deference it's due, citing 2254d. And I believe in post-Penholster cases in this circuit, such as Mielke v. Ryan that was just decided last week, the analysis in Taylor v. Maddox still stands. But, excuse me, wasn't that stated, it was citing Estrada and Landrigan v. Schreuro, which said that in making the determination, you have to take into account the fact that it will have to meet the d1 standard. So in making the Townsend v. Sane determination that the facts, if true, would entitle Petitioner to relief, you have to take into account the d1 factor. That was the context in which that statement was made, not in a d2 context. Right. And I think where the analysis comes in here, though, is Taylor v. Maddox says you have to do an intrinsic review of the state court fact-finding process. In other words, is that fact-finding process fair and sound? In this case, Stanley came forward with evidence, spoke to both sufficient performance and prejudice. And he was not allowed to present that evidence. The state court opinion — So are you saying that the panel could have made a d2 determination, but again, I just didn't see that they actually made one. It seemed like they were relying on the Townsend factors, and I'm not even sure if they cited Taylor in that context. Well, the Townsend analysis is still valid in the sense that after Penn-Holster and even before Penn-Holster, I believe, the analysis is was the state court finding unreasonable because it either got the law wrong or it got the facts wrong or because this is an IAC claim, it's a mixed question of fact and law. Once you do that analysis and you say you believe that the fact-finding was unreasonable, I would not agree that we win on a paper record. We still have to prove our claim. So that's where 2254A comes in. Well, the difficulty in this case was that the state court didn't make any findings regarding the investigation underlying trial counsel's decision. There was just a statement by the state court that this was a reasonable trial strategy. There were no findings that were made. That's correct, Your Honor. And as the Supreme Court has told us time and time again, strategic judgments are only allowed deference and considered reasonable to the extent they're supported by a reasonable investigation. And we know from the affidavit in post-conviction that he never consulted with his own experts after the guilt phase. And how simple would it have been? You just said that, well, we have to look for, as far as the state court determination on deficient performance is whether the factual record before the judge allowed him to make a determination the tactical decision was reasonable. Right? Right. Well, didn't he do that? He did, but it was not reasonable. And I can tell you why. What was the finding that was made by the state court? What were the factual findings that were made by the state court? Well, what he said was he, on a paper record, weighed the benefits and the harms of the testimony or not the testimony, but the Hammett information. But it's a perfect illustration of why a lawyer needs the advice of a mental health expert before he makes strategic judgments about that kind of evidence. And I can go through everything he said was damaging and point out how it really isn't. For starters, I didn't point this out in the brief, and I think I was remiss for not doing so. At ER 525, in the Hammett interview, she says she was not aware of the facts of the crime when she was talking to Mr. Stanley. But we're not doing a de novo review, right? I mean, assuming so the district court did a D1 review and said that the state courts, the state PCR courts' determination that there wasn't an effective assistance of trial counsel in not presenting the Hammett information to the other mental health experts was not an unreasonable application of Strickland, that the state court could have reasonably determined that it was a reasonable application of Strickland. So in the panel decision, there was something akin to a de novo review in determining under the Townsend v. Zane factors whether his facts, if true, would entitle him to relief. But now that we can't look at this evidentiary information, aren't we back to where the district court was in determining whether it was an unreasonable application of Strickland? See, I believe that the panel opinion already found it to be unreasonable. And I think because it's a Strickland issue, it's D1 and D2. It's hard to separate out. It didn't say that. There's no place in the panel opinion. Does the panel say either that it was the state court made an objectively unreasonable application of Strickland or that it made an objectively unreasonable determination of the facts in light of the record? There's no reference to that in the opinion. It may not explicitly state it. It does cite to 2254D1 and 2. And it says in making the decision about whether a hearing is necessary, we are citing to 2254D and giving a state court deference. One and two is always there. Kennedy, Ms. Harms, help me again. If you are you now back in the position of saying the panel decided that there was ineffective assistance of counsel by Mr. Friedman, yes or no? It's tough, isn't it, because you say, yes, we shouldn't be here. I think what the panel decision said is what I go back to is the analysis is, was it unreasonable? The panel decision do, not what it says. First of all, what did it do? It demanded for an evidentiary hearing, right? Right. Because it was unreasonable not to allow him an evidentiary hearing because he brought forth colorable allegations. To allow him to prove prejudice and to allow him to prove deficient performance, right? Right. So those two matters hadn't been determined by the panel if they are ordering an evidentiary hearing. Now, the question is, can you say, true? I guess I would have to concede that, yes. We can't win on a paper record, which is why you cannot just automatically hold up every State court decision because there is only a paper record. However, at this point, this panel can determine on this record that there was no ineffective assistance of counsel. True? I don't believe so, because under law of the case, so many facts have already been found in favor of Stanley in the sense that he was diligent in developing the record. That just gets you past the 2254E2 bar, right? And that the panel did decide. But the panel was very specific in its analysis as to why it was not strategic and why it was unreasonable to find that it was strategic based upon the record. And once again, I would like to go back to the Hammett information. She said supposedly there were all these damaging things in there that it was strategic to keep out. As a lay person, you may think that at first blush. But once you educate yourself about the mental health evidence, it becomes clear it's not that damaging. She said he was not psychotic when she saw him less than 48 hours after the crime. Which was directly contrary to what Mr. Dr. Blundell Glass said at ER447, that it was a psychotic dissociative reaction. True? That may be true. So it was a conflict on an essential point. Was he psychotic and was he not psychotic? It's not a good tactical decision to keep contradictory evidence away from your expert. But she wasn't talking about his state of mind at the time of the crime. She was talking about when she saw him. She's not saying I didn't think he was psychotic at the time of the crime. She's saying when I saw him about 48 hours later, he wasn't psychotic. That's not inconsistent with him being psychotic or having a dissociative reaction at the time of the crime. The court said it was damaging. She attributed the statement of watching himself to whatever state of intoxication he was at the time of the crime. Dissociative states can be brought on by acute intoxication. And that statement would be no worse than the state expert opinions already in the record. I'm not sure what you're arguing. I mean, are you asking us to say that the district court or are you asking us to make a D-2 determination now? I'm not sure what you're asking us. Maybe you could clarify that. Under law of the case, this prior opinion, the prior panel opinion, I feel already found the state court decision unreasonable. So it found the state court was an unreasonable application of? D-1 and D-2. Of Strickland or an unreasonable determination of the facts? I believe it's both because Strickland claims are mixed questions of fact and law. If it's both, then as Judge Bea points out, then we're through, right? We're bound by that determination. So, again, I'm not sure what it is you're asking us to do. If you would like to give me relief now without going back for a hearing, I will accept that. But I think the analysis, the better analysis is that in Breyer's concurrence, which is if you find that it was unreasonable under D-1 or D-2, you still have to determine under A was there a constitutional violation. I would be happy if you accepted all my facts as true, but we do need to go back and have a hearing and determine are these experts still saying what they said at the time of post-conviction? Yes, they are. Does that make sense, though, in a Strickland when the claim is an ineffective assistance of counsel claim? Because if, in fact, the panel said the State court was unreasonable determining there wasn't ineffective assistance of counsel, then there was ineffective assistance of counsel. I mean, that's what all of our cases have said. I guess I'm not grasping the question exactly. Okay. So you're saying the State court, that the panel said the State court was unreasonable, objectively unreasonable in determining that the counsel for Stanley provided him effective assistance. That's what the State court said, that he didn't have an ineffective assistance of counsel claim. There was no Strickland violation. And you're saying that's what the panel held, and then what is it that we need an evidentiary hearing to tell us? Because 2254A says you also have to find a violation of the Constitution. Okay. So it would be a Sixth Amendment violation, right?  Your right to counsel was violated. So why do we need an evidentiary hearing if the panel held what you said it held? Because I think if you read Justice Breyer's concurrence, what he is talking about is a situation where, just like this, there's no hearing in State court, but there clearly are factual issues that have to be resolved. You get to Federal court. You look at what the State court did. You said, well, that's not reasonable because they didn't allow factual development. And he presented a colorable claim. There was reason to question what the sentencing counsel did. Counsel, do you think that the Cullen v. Penholster case changes the analysis at all in this case? I really was very confused when Penholster came out, Your Honor, because I always thought we had to show it was unreasonable to begin with, and then we go from there. And I think that's where Townsend comes in. Can you answer the question? Does Penholster change the analysis? I don't think it really does. That's the difficulty I'm having with this case is, I mean, if we're limited to the evidence that was before the State court, it complicates your argument, it makes your argument much more difficult. But you're not limited to the evidence if you find that it was unreasonable fact-finding. And you have that here. And in post-Penholster cases, this Court has continued to employ the Taylor v. Maddox reasoning. Well, let me ask you about that. As I noted, when I looked at the record, I didn't see any argument made either to the district court or to the 2010 panel under D-2. There was no request. Is that waived? Can we properly address if you were making now an argument that the State court made an unreasonable determination of the facts? Can we address that as a D-2 matter? Well, I think, as I said before, I would be surprised if I did make that argument, because, I mean, it's a stricken claim. It's a mixed question of law and facts. I mean do you review the record and your argument that you made before? I felt sure that I presented a D-2 argument, so I would be surprised if I didn't somewhere in the district court or the Ninth Circuit. But I would just go back to it's stricken. It's by its very nature. It's the facts and the law that are implicated by the claim. So it's by common sense you have to do D-1 and D-2 analysis because it's too difficult to separate. In this case, that's, you know, it was a reasonable investigation. What are the facts underlying that? The facts and the law are intertwined in a stricken claim. In all fairness, pre-Penholster, there wasn't that demarcation between the factual finding and perhaps a perceived need for an evidentiary development of the record. It wasn't really fleshed out in that way before Penholster. So perhaps there was not as much focus on that as there would have been if the  Right. And I'm fairly certain if not in these briefs and O6 briefs, I argued unreasonable application. So if I had waived it, I was remiss, but I certainly never intended to. I would like to go back again to the Hammett statements that the Court said were allegedly so damaging. He realized right away what he had done. That's not at all inconsistent with a dissociative reaction. They begin and end very quickly. He could have snapped out of the dissociative state and realized what he had done in a short period of time. You haven't gone through the psychotic issue quite yet. Hammett found the defendant was not psychotic at that time. And you've shown the difference between the time of the murder and the time of her interview. But she also found that he had not been hearing voices. She found that twice, at 515 and 540. But then, strangely enough, the defendant came along November 28, 1986, and claimed that he'd always heard voices. So he was inconsistent about whether he'd heard voices. That goes to psychosis. Now, if you were defending a person whose expert witness said he had a psychosis, a psychotic dissociative reaction, would you introduce contradictory statements out of the mouths of your client that he had heard voices and that he'd never heard voices? I would want to investigate what Hammett's information meant. Because it was the timing of it. The spotted memory of Stanley is why everybody said, yes, he was coming up with different versions. Nobody said he was doing that intentionally, that he was a liar. They said he was confabulating. Do you think that a jury might say that the day after he was arrested and before he had seen counsel, he might have one version, which is, I didn't hear voices, but after he'd seen counsel five months later, he suddenly recalled that he'd always heard voices? Do you think that might be hurtful to the idea that he was psychotic at the time of the murder? It might be inconvenient. Right. But I guess my point is, is that you cannot make a decision until you educate yourself about what the mental health evidence means. And all these experts said the Hammett information is so important because it was so soon after the crime, because of those very reasons that you cite, that he did give differing explanations later, much later, and all the experts saw him two to three months later. Dr. Gerstenberger, the state's expert, said, I was the first one to see him, and he never said anything about these out-of-the-body experiences to me. Well, that was false, because he had seen Dr. Hammett, and he did state that right after the crime. I guess my concern is, this is post-after the panel ruled in 2010. We've had Harrington v. Richter. We've had Primo. We've had Cullen v. Penholster, Penholster v. Cullen. And they're all telling us to indulge a very strong presumption that the attorney representation did not fall below a standard of reasonableness. And here we have these interview notes of the psychiatrist who says he's not psychotic. He didn't show any remorse. His only problem was he found himself in a bad place after he sobered up. Indulging this strong presumption of reasonableness, I think even de novo you might say it wasn't an effective assistance of counsel. But now we have the double deference under AEDPA. Why wouldn't we say it wasn't objectively unreasonable on the state court's part? Well, all those cases you pointed out, I think you also need to remember Martinez, which I think informs the analysis. Because what Martinez teaches us is that these ineffectiveness claims are going to turn on extra record facts and outside investigation. In state court, post-conviction counsel went out and did the legwork. And he presented the court with extra record facts. In this case, it wasn't the attorney who was to blame for the lack of a developed record. It's the state court. And like, again, as I said before, everything that was potentially so damaging from a layperson's perspective, once you understand the mental health evidence, it's really not. How was the state court to blame? I thought there was a second round of affidavits were submitted to the state PCR court. The two affidavits that I think make the culpable claim are Bindleglass and Garcia Brunel. And those have never changed. They've never wavered from what they said. So the state PCR court had the original reports and testimony and then these follow-up affidavits where the counsel, PCR counsel, was trying to make the case that he had ineffective assistance of counsel. And how did the state PCR court prevent the development of the record? I'm not – I guess I missed that. Because Stanley asked for evidence for a hearing and he also asked for another mental health evaluation. He was able to get Dr. Bindleglass and Dr. Garcia Brunel to review things without having to pay them. So he did not even get funding for an additional mental health evaluation, but he was still able to make this culpable claim. And I don't think pinholster can be read so broadly to stand for the proposition that a state court can completely cut off all factual development in every single case and you can never have a federal hearing. It cannot mean that. Martinez teaches us these claims, if you present a culpable claim, you need to have a hearing. You need to hear from live witnesses. This is not the kind of thing that you can decide on a paper record, especially in this case, because the judge, the post-conviction judge says, well, weighing the benefits and the harms of this testimony, that's exactly why you need to have a hearing. You cannot perform that kind of weighing without testimony. What would have come out in an evidentiary hearing? One thing I was puzzled about with the panel decision said, Stanley's allegations if proved. What factual allegations is Stanley saying? Like, what are the factual allegations that would have made a difference? They have never wavered. What the sentencing court said was there is no mental disease that affected him at the time of the crime, and there's three to one expert saying that. That's what the sentencing court said. Now the calculus is exactly the opposite. And I would like to reserve the remainder of my time for rebuttal. So in essence, if the two experts had known about the Hammond interview, their opinion would have changed and changed the calculus of the number of experts who agreed that there was a mental defect. That's correct. Good afternoon, Your Honors. May it please the Court. Julie Doan representing Respondent Ryan in this case. I'd like to start out with the most basic question that I think this Court is asking. The prior panel opinion in our opinion did not decide D-1 and or D-2. What do you do with Earp v. Arnowski, which says that in order to require an evidentiary hearing, that the decision has to say that there was an unreasonable determination of the facts. And so that's a predicate for ordering an evidentiary hearing. So how can you say there was no finding if our case authority says that's the predicate for remanding for an evidentiary hearing? Well, we couldn't. Our reading of the prior Stanley opinion, of your opinion, Judge Rawlinson, is specifically the language in the opinion that said, finally it is important to keep in mind that our decision in no way affects Stanley's conviction, and it may not affect his sentence. All this decision does is give Stanley the opportunity to establish whether his counsel's failure to fully inform the defense mental health experts undermines confidence in the sentence of death imposed. Right. And the predicate for that was that the State court did not develop the facts. So it was an unreasonable determination of the facts, which warranted an evidentiary hearing, and without prejudging what that evidentiary hearing would show, the case was remanded for that hearing. Well, we didn't see any determination, again, from our reading of the opinion on either D-1 or D-2, and we would argue that they waived any argument on D-2. We reviewed the briefs, and as Judge Aikuda has pointed out, we didn't see any argument that the facts were unreasonable, an unreasonable determination of the facts. But based on court masters ---- And an evidentiary hearing is ordered, would it be your argument that there is no basis for remanding the case for a hearing if the State court makes absolutely no determination of facts? If the State court's decision is an adjudication on the merits, yes. So your argument is that the State court doesn't have to make any factual findings at all? No. No, the State court does not, when you say not. The State court does not have to make any factual findings, and it's this Court's duty and decision to review the State court record and determine whether or not the State court's decision, whether or not it made any factual findings, was unreasonable. And I agree with Judge Aikuda that in this Court's position, it's double deference that we're entitled to. This Court is not reviewing Strickland de novo. This Court is deciding whether or not the State court's decision on Strickland was unreasonable. So if we look at that, do you think that the State court in this case made any factual findings? I do. What were the factual findings that the State court made in this case? Well, in the PCR decision, the post-conviction relief decision, is what I'm referring to. What were you on the record? It's specifically ER 110, the current ERs, not the ERs for the original briefing. Hold on just a second. Oh, no problem. It was hard for me to keep all these straight between all the ERs in both briefings, so. Okay. And it's the middle paragraph that starts with the record in this matter, and then we believe the paragraph following that had defendant's counsel disclosed. Those two paragraphs, we believe that the post-conviction relief court, the PCR court, made specific findings regarding the Hammett interview. And in doing so, as it's obliged to, they reviewed the trial record. So what were the findings that were made about the Hammett interview that you think were adequate to deny relief? Dr. Hammett told the defense investigator, in addition to the matter, this is in the middle of that first paragraph I referred to, in addition to the matter set forth in the above-referenced affidavits, referring to Dr. Bindleglass and Dr. Garcia-Boonwell's affidavits, that he had realized right away what he had done, that she detected no remorse, and that she found no indicators of psychotic thought process, and that she believed that his sense of watching the homicides had been produced by a combination of his intoxication and his difficulty accepting what he'd done when he became sober, presumably as opposed to a disassociative reaction. And then if you go to the second paragraph following that, I believe that's when the specific findings come out. They compare what had been offered at trial. He refers to transcript at page 1606 and 1582, and those are the trial testimony of Dr. Bindleglass and Dr. Garcia-Boonwell. Was the issue that if the other two experts had known about the Hammett interview, their opinion would have changed? Did the State court make a finding regarding that issue? I'm sorry, which experts are you referring to? Bindleglass and what was the other one? Garcia-Boonwell. So wasn't that the argument that those two experts' opinions would have changed if they had known about the Hammett interview? Well, Dr. Bindleglass specifically said in his affidavit that it would have confirmed and corroborated. So I would argue that he's not arguing that it would have changed his opinion. His trial testimony was replete with information regarding disassociative reaction. But it was a little bit, I would say, it wasn't firm. He was saying it's possible, you know, I can't confirm it. But his affidavit afterward was saying if I had known about the Hammett interview, I would have been stronger in my testimony regarding that. You would have been stronger, which we would argue is an extension of cumulative, not distinct and different from his trial testimony. How about Garcia-Bundell's? And Garcia-Bundell said that, because he didn't rule out the possibility of a disassociative reaction, and, in fact, it's his. He said it was unlikely. But he wasn't willing to rule it out. He seemed to have less experience with it than Dr. Bindleglass. But he attached like eight pages of literature to his report that was submitted at trial regarding disassociative reaction. So he still gave an informed opinion. And, in fact, Dr. Bindleglass had statements similar to those that Stanley had made to Dr. Hammett. So would you point me to the record where the state court said anything about the change, and whether it was cumulative or what the effect was of the statement that if they had known about Dr. Hammett's interview, their testimony would have been different? Where did the state court make a finding regarding that? Well, I think that's in that paragraph, that second paragraph. Which paragraph? ER-110? Yes. It says, "...had Defendant's counsel disclosed Dr. Hammett's interview of the defendant and the interview of Dr. Hammett by defense's investigator, defense would have waived the patient-physician privilege and Dr. Hammett and her interview could have been used. It appears to this Court that since the defense had the opinion of Dr. Bindleglass that Stanley was in the form of a psychotic disassociative reaction that his ability to fully appreciate what he'd done..." And I won't keep reading, but... Yeah, the court basically said the harm outweighed the benefits. But at the sentencing phase, how could that be? I can understand at the guilt phase, but at the sentencing phase, how could that be? How is that reasonable to say that the harm would have outweighed the benefit at the sentencing phase? Well, there's a few different things. One of the big items was remorse, which gave the sentencing court quite a bit of trouble in deciding whether or not he felt that Stanley was remorseful, and that was a big mitigating factor that defense counsel had argued. There was quite a few people that testified, and I can go through those if you'd like, that they believed Stanley was remorseful. And then the experts all agreed that he was remorseful, but the trial court or the defense court found it difficult because nobody said or explained what that meant, whether he was truly remorseful for what he'd done or whether he was remorseful after the fact of what had happened. So he had a lot of difficulty with that. In Hammett's interview, she said she didn't find anything per se that would show that he was remorseful. Let me pull up the statements that she made. The sentencing judge found as mitigating factor number five remorsefulness. Yes. So Friedman was successful in selling remorse. Exactly. And I think what the trial judge found was that if he'd had Hammett's notes saying the day after, I couldn't find anything about remorse, he might have had more difficulty selling it. Yes. Yes. So remorse. Is that right? Exactly. That's exactly right. So remorse, which the sentencing counsel or sentencing court said that, you know, it was very troubled by that. Okay. So that's one thing. That's one. Would that outweigh the dissociative state, which would negate the mental status? I'm sorry? Would the remorse issue outweigh the dissociative state, which would negate the mental capacity? I don't think those are necessarily connected. But we're looking at the harm versus the benefit. Yes. So the big benefit that the defendant was seeking was information that he was in a dissociative state, which would excuse, if you will, his conduct. So what I'm asking is that the district court make a determination that the remorse factor outweighed the benefit that would be gained if the court were convinced that he was acting in a dissociative state. I would argue yes. And again, I'm referring to that first of those two paragraphs on ER-110, where he talked about what the defense, what Dr. Hammett told the defense investigator. And I think what the court is doing, and maybe it could have done it a little better, is pointing out the differences or the reasons why Hammett's interview would have been detrimental. Are you saying that Hammett's interview, had it been introduced, would have shown that, contrary to dissociative reaction, which was what Lyndon Glass and Garcia Manuel would testify to, she had said that this same coming off the wall and seeing oneself do the crime was produced simply by intoxication? Yes. But she was talking about it at the time that she interviewed him, not the time of the crime. Did she discuss anything about what his condition was at the time of the crime or at the time she interviewed him? Well, in that statement there, again, that paragraph, she said that she believed that his sense of watching the homicides, so I would argue it is the crime, the murders, had been produced by a combination of his intoxication and his difficulty accepting what he had done when he became somber, presumably as opposed to a dissociative reaction. She also, in those statements there, when they talk about he realized right away what he had done and that she found no indicators of psychotic thought process, which is, dissociative reaction is a form of psychosis. So those directly conflicted with what Dr. Bindleglass and what Dr. Garcia Manuel later on and Dr. Bindleglass at trial would have testified to. It was a hard sell to start with because only Dr. Bindleglass was the one that came to the opinion that he was suffering from a dissociative reaction. Initially. Initially, exactly. But Dr. Bindleglass did have statements from Stanley that are similar to Dr. Hammett's. Stanley told Dr. Bindleglass in his interview with him, I felt like I was outside of myself. Let me go exactly to those statements, very similar. In his report, Dr. Bindleglass that was presented to the trial court said that Stanley told him he stopped, he got out of the car and started shooting into it. He says he doesn't know what was in his head. It was like he was there watching himself as if something got out of control of him. And as he related this, he started crying and he says that as he came to all of a sudden and then he vomited. So those are, and then he also talks about how he remembers the feeling of not being in control, feeling like a robot, which feeling like a robot I guess is a sense that people get in a dissociative reaction state. So those are statements that Stanley made to Dr. Bindleglass. So those, Dr. Bindleglass had those statements and Dr. Garcia Bunuel had Dr. Bindleglass's report before he wrote his report. So your argument is that if Dr. Bunuel thought that that was something that was important, could have articulated that. Exactly. And did in his report say there's a possibility and mean he had those statements. So he had statements similar to those that Stanley had made to Dr. Hammett. So it's completely reasonable for counsel to have wanted to keep out Dr. Hammett's interview when there are portions of it that could have been very detrimental to the proposition of a disassociative reaction or remorse when they already had some of those statements specifically from Stanley. Just a second. Isn't there a necessity to have an evidentiary hearing to determine that very same fact or can that determination be made by the PCR court on affidavits alone? I'm sorry. What very same fact? Well, the fact of prejudicial content in Hammett's statements, right, can the judge determine that simply on affidavits and by looking at the material, Hanratty's statement from Hammett's notes in that statement? Or does it have to be an evidentiary hearing at which the judge can appreciate the witnesses and check their demeanor and have the witnesses cross-examined? I don't believe that there has to be. On this record, they submitted their two affidavits and they submitted Dr. Hammett's interview with Mr. Hanratty. They had all the information. The PCR court can determine that it's not a colorable claim without seeing a witness testify? Yes. I don't believe that there has to be a witness testify. Do you have a case that says that? Well, we've said that a State court's decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the State court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question. So the question is would it be reasonable to conclude that based on the PCR's affidavit, the PCR court's affidavit, whether that was sufficient to resolve I guess I'm not sure what the factual question was, but I guess the effect of Hammett's interview on the experts. So is it your position that the evidence before the PCR court was sufficient? Yes. Yes. And then this Court's doubly deferential review of the PCR court's decision in this we believe that this Court should find that that was a reasonable decision based on the evidence that a reasonable decision by trial counsel to do what he did based on the evidence that was before it, and that the PCR court's decision was reasonable. Well, not a reason. Whether or not it was a reasonable tactical decision, right? I'm sorry. You're not looking at whether the decision was reasonable. It's whether it was a tactical decision. Tactical, but I believe this Court's job is to look at whether or not the PCR court's decision was reasonable based on what it had before it. If I said the attorney's decision was reasonable. No. No. I'm sorry. I'm sorry if I conflated the two. So what was in the affidavit specifically before the PCR court that you thought laid out the factual scenario sufficiently that no evidentiary hearing was required? Well, Dr. Bindoglass' affidavit, which was 6 pages long, and he talks about, he specifically talks about the Hammett interview that Ms. Hammett had with Mr. Hanratty, what he gleaned from that interview, how it would have changed his testimony or his opinion. Did they also, did the PCR court, I thought they also had Garcia-Buñuel's follow-up affidavit. Follow-up affidavit? A second. So Garcia-Buñuel made a report and a testimony at trial and then made a second affidavit for use in the PCR before the PCR court. Yes. And there, he actually changed his view from saying it was unlikely that there was a dissociative reaction to saying there probably was, and he was probably mcNaughton and saying, I think, was the words to that effect. Yes. Yes. Yes. So is he? Oh, sorry. I was just going to say yes. Those are the two experts that provided affidavits in support of the post-conviction relief petition. So the PCR court looked at both those affidavits and nevertheless determined that the benefits, the benefit of, the harm that would be produced from the testimony from Dr. Hammond outweighed the benefits that were articulated in those affidavits. Yes. And that's specifically ER 110. I guess I keep going back to that, that I find it's vital in this case to review that. Another argument I'd like to address, Petitioner argues that this court should have looked at the testimony of IAC de Novo. He argues that there was no finding by the PCR court. We would disagree with that. He makes this argument, I believe, in his reply brief to this Court. We would disagree with that and argue that the PCR court did find that defendant's determination not to waive the physician-client privilege was a matter of reason trial strategy and does not present a colorable claim that trial counsel was ineffective for failing to do so. Is that a prejudice? You say that's a prejudiced determination? We would argue that that combines at the end by arguing or by pointing out that it doesn't present a colorable claim that trial counsel was ineffective, that that covers both prongs of Strickland. Really? It sounds to me like a first-prong argument only. Well, he definitely went through the first prong and argued whether or not he. I think it's a stretch to say it was a second-prong argument. An argument. And if it was ineffective, then at least it didn't, it wasn't harmful. I mean, that seems to be the way the prejudice. Yes, there's no language to that effect. But based on the most recent cases of Harrington v. Richter and Williams v. Johnson or Johnson v. Williams, I'm not sure if I'm conflating those two, that it would seem counterintuitive that you would give a summary denial, a deference as an adjudication on the merits, but when a trial court is so specific in their findings to then say that we can review prejudice de novo because they didn't specifically say we find no harm, that just seems counterintuitive to what Harrington was doing. Well, that's what we do. If the court doesn't make a finding, we do review de novo. But perhaps the court thought it didn't need to go to the prejudice because it didn't find ineffective assistance. And you just brought up my third argument, is the court even said that at the beginning when it talked about Strickland, is it said it doesn't need to go through both. And as Judge Ikuda recently wrote in the Golbrinson opinion that came out yesterday, in a couple of those ineffective assistance, I think there was two ineffective assistance counsel claims, she talked about how you don't need to get to the other one because you found, I think it was prejudice you found in one, so you didn't even need to review deficient performance. So our argument would be they cannot prove that there was no deficient performance, so he wouldn't have needed to even get to prejudice, which is what we believe. The stronger argument. Yes. But I figure I'll throw it all out there, so. I understand. And we would strongly request that this Court not consider any of the 2011 evidence that was prepared in preparation for an evidentiary hearing before it was vacated based on pinholster by the district court for several reasons. One, basically because we're arguing that this is a 2254d analysis. Petitioner Stanley has never argued that it shouldn't be reviewed under 2254d and never argued that this claim was not adjudicated on the merits. Therefore, based on pinholster, you have to review it on the State court record. Secondly, the evidence that Stanley has referred to in the briefs in which we have requested that this Court not consider and actually be struck from the briefs was never part of the district court record. They filed a notice of filing and requested that it be filed. Within two days, the Court granted that notice before Respondents had a chance to respond, so that day Respondents filed a motion for reconsideration and said, excuse me, with all due respect, Your Honor, this evidence was never made part of the record. There was never a hearing. It shouldn't be part of this record. It was never considered by this Court. Ginsburg. What did the district court say? They struck all of them. The district court struck all of them? Yes. All of ER 184 through, let me make sure I tell you the exact numbers. I think it's 289. And we make this argument in our brief that this Court, any references to ER 184 through 279, Petitioners' Excerpts of Records 184 to 279, should not be considered by this Court based on that. In addition, some of it was interviews that we were doing in preparation for a hearing. So it's clearly one-sided. It's not cross-examination. It wasn't both sides presented. So based on Penholster, the fact that it's never been part of the record or any record, it was struck from the record, this Court should not consider any of the references to those citations. And if the Court has no further questions. It appears not. I'll submit on the briefs. Thank you. Thank you. Just very quickly, your question, Judge Ikuda, about whether we raised a D2 claim ever before, you scared me. So I went back and looked quickly as I could through the briefs. And if you look at the 06 brief on page 40, just for one instance, we clearly argue unreasonable fact-finding there. What do you say? That we did not waive. Can you read it from the brief? Yes, I can. We start out by pointing out that they dismiss a claim without a hearing. Because he supported his claim with affidavits from the trial experts, he presented a culpable claim that entitled him to a State court hearing. The State court's decision and fact-finding were unreasonable and, therefore, not entitled to the ad pro presumption of correctness because no hearing was held to allow Stanley to further develop his claim, citing Earp v. Ornosky. That's a 2254E2 argument, right, that or E1, that it's not a presumption of correctness? We specifically said the State court's decision and fact-finding were unreasonable, which to me speaks to D2. Did you cite D2 anywhere? I'm sure I did somewhere else in the brief, in the two briefs. I feel pretty certain that that's kind of what we're all working with is D1 and D2, and we pretty much kind of assumed that's what the court would be addressing. Do you take issue with opposing counsel's representation that the district court struck pages 184 and following, and, therefore, we should not consider any reference to those pages when we're deciding this case? I don't think it's necessary for you to refer to it to decide the issue before you, which was whether or not there's enough here to go back for a hearing. It's the same. I think what he was saying in State court, the only thing it shows is that it's not fruitless to go back and have a hearing. In fact, now even Dr. Gerstenberger says that he thinks Stanley was suffering from a dissociative reaction. The only expert now left to disagree, Dr. Stewart, thinks he was G1, significantly impaired at the time of the crime. So there's not a single expert who would not support Stanley's claim that he was significantly impaired at the time of the crime. That is very significant. I would also like to talk about the fact that somehow, because Stanley said this to Bindleglass and it's in his report, somehow that erases any prejudice. And if you look at the trial testimony, what happened was he said no expert would disagree with dissociative reaction at this point. How about Dr. Hammett? Dr. Hammett says she's not comfortable giving an opinion, because she was never asked to do that. She said she didn't have enough information. She also says, I did not mean for my statement to be taken as saying he was not remorseful. So everything that the post-conviction court relied on we know now is not right. So Bindleglass, in terms of him saying, making that statement in the report, he did not put dissociative reaction in his report. And he said, because Stanley gave so many different accounts, he didn't highlight that and he didn't focus on dissociative reaction. If he'd seen Hammett's report, he would have. And he was dinged pretty good on cross-examination by the prosecutor because he didn't put it in his report. So what exactly is the order you wish us to enter or opinion to be held? What relief do you want? I want a hearing so he can have his day in court and prove his claim, which he's been asking for for decades now. Could you respond to opposing counsel's reliance on page 110 of the record, which she says shows that the evidence that was sought to be presented would be the harm would outweigh any benefit? Well, I would just go back to there is a psychological explanation to show why each of the reasons the state post-conviction court gave do not hold any water. But that wasn't the question. The question is whether or not it was reasonable, a reasonable tactical decision for the attorney not to disclose the Hammett report because any benefit would be outweighed by the harm that would ensue from her report. So what's your response to that? We know there was no strategic decision about it because Dr. Bindleglass' affidavit said he never even spoke to me after the guilt phase. I was never consulted about sentencing. That doesn't matter, though. I mean, the issue is whether or not we know that the attorney made a tactical decision to keep Dr. Hammett's report out, right? Right. So we can't say that that was not a tactical decision. So the issue becomes whether or not if that Hammett report had come in, the harm would have outweighed any benefit. So that's the question I'm asking you. Why is that not true? That it was not a reasonable strategic decision? Well, why wasn't it reasonable for the PCR court to say? Even if Dr. Hammett even if we had allowed these other psychiatrists to test to put in their affidavits, any harm would have been any benefit would have been outweighed by the harm that came from Dr. Hammett's affidavit. Why isn't that a reasonable finding on the part of the court? Because Dr. Hammett's information was not that harmful once you educate yourself about the mental health evidence. And that's why as a lawyer, as a layperson, you can't make strategic decisions until you consult with your mental health expert. Had he consulted with his mental health expert, Dr. Bindleglass would not be the only voice crying alone in the wilderness that this was a dissociative reaction. Dr. Gersenberger and Dr. Garcia-Brunel would have had to agree. The timing of that statement was so key to those mental health experts. It's hard for us to understand as laypeople, but the timing of it, the fact that he was not being medicated yet with Thorazine and other antipsychotic drugs made that statement so much more credible to them. Statements you say three and four months later, as you said, after you've been talking about the crime over and over, are not going to be as credible as something you say within 48 hours after your arrest. And all of these experts say, of course I would want to have that. That is the most key evidence that you can ever have, a statement made right directly after the crime. It's pretty rare to have that good of evidence. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case is argued and submitted for decision by the court, and we are adjourned.
judges: Rawlinson, Bea, Ikuta